■ EDWARD R. SMIZASKI, JR., Appellant-Respondent, v 784 PARK AVENUE REALTY, INC., et al., Respondents-Appellants, et al., Defendants. GEMTOR, INC., Third-Party Plaintiff, v HERBERT ROSE, INC., Third-Party Defendant. (And Other Actions.) [694 NYS2d 371] —Order, Supreme Court, New York County (Harold Tompkins, J.) entered on or about March 19, 1998, which denied plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) cause of action, unanimously reversed, on the law, without costs, and the motion granted.

Plaintiff, an employee of third-party defendant Herbert Rose, Inc., was assigned the task of removing window sills on a high-rise apartment building owned by defendant 784 Park Avenue Realty, Inc. In order to accomplish the task a motorized swing scaffold was provided. This scaffold, which was suspended from two steel cables connected to the roof parapet, contained a protective railing on the edge facing away from the building but not on the inside edge. Workers using this type of scaffold are able to push away from the building wall by using their legs so as to maneuver around protrusions while ascending or descending.

Prior to using the scaffold, plaintiff was also provided with a safety harness and a device known as a rope grab. This device connects the worker to a safety line that is in turn connected to the building. The purpose of the rope grab is to prevent workers from falling to the ground.

On the date of the accident, plaintiff began to ascend the building but his movement was blocked by an air conditioner that was approximately thirty feet above the ground and protruded three or four feet from a window. Seeking to maneuver past the air conditioner, which was on the scaffold's right side, plaintiff faced away from the building and, with his left leg on the edge of the scaffold and his right leg fully extended, so that his body was suspended between the scaffold and the building, he pushed the scaffold away from the wall. Plaintiff, at the same time, was required to operate the motor to raise the scaffold. It is uncontroverted that the need to use this dangerous maneuver could have been avoided by temporarily removing the air conditioner from the window. In any event, during this maneuver, the top corner of the scaffold hit the air conditioner, which "shook" the scaffold, causing plaintiff to lose his balance and fall between the inside edge of the scaffold and the building. Plaintiff, despite being connected to the safety line, fell 30 feet to the ground below and suffered various injuries.

Thereafter, plaintiff commenced this action against 784 Park

Avenue Realty, Inc., as well as others, alleging that Labor Law § 240 (1) was violated. Plaintiff moved for partial summary judgment against 784 Park Avenue Realty, Inc. on this claim. This appeal concerns Supreme Court's denial of that motion.

Labor Law § 240 (1) provides that "[a]ll contractors and owners * * * shall furnish or erect, or cause to be furnished or erected * * * scaffolding * * * ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to [construction workers employed on the premises]." The duty imposed by this statute upon an owner is nondelegable (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500). Under section 240 (1), in order to demonstrate entitlement to partial summary judgment on the issue of liability a plaintiff must demonstrate that the statute was violated and that such violation was a proximate cause of his injury (*see, Bland v Manocherian*, 66 NY2d 452). Here, plaintiff contends that the statute was violated because the scaffold from which he fell failed to contain a protective railing on its inside edge (which it is claimed would have stopped him from falling), and because the rope grab failed to perform its function. He further contends that these violations were a proximate cause of his fall.

Initially, it should be observed that if we were dealing only with the scaffold there would be no question that summary judgment should be granted. This conclusion flows from the well-established principle that "the availability of a particular safety device [such as a scaffold] will not shield an owner or general contractor from absolute liability if the device alone is not sufficient to provide safety without the use of additional precautionary devices or measures [citation omitted]" (*Conway v New York State Teachers' Retirement Sys.*, 141 AD2d 957, 958-959). In fact, under circumstances similar to those of the instant case we granted summary judgment in *Dominguez v Lafayette-Boynton Hous. Corp.* (240 AD2d 310).

What complicates the matter at bar, however, is that plaintiff was furnished not only with a scaffold but also with a rope grab. The emergent issue therefore is whether this additional safety device was sufficient to create a question of fact regarding defendant's compliance with Labor Law § 240 (1).

The record shows that after plaintiff's fall the rope grab remained connected to his harness and to the safety line but that the grabbing mechanism never engaged the safety line. The record further reflects that both before and after the accident there were several inspections of the rope grab which revealed that it was in working order and was not in any man-

ner defective. The only explanation as to its failure to engage the rope and arrest plaintiff's fall appears to have been proffered by the job superintendent, plaintiff's brother. At an examination before trial, he testified that "the only thing that could make sense" was that plaintiff was holding the rope grab in the disengaged position as the scaffold ascended. Then, when he began to fall, his hand remained frozen around the mechanism and it remained disengaged for the duration of the fall. In this regard, the rope grab has a lever that must be manually held in the "up position" in order for the grabbing device to slide through the rope. Plaintiff, however, denied that his hand came into contact with the rope grab at the time of his fall.

Defendant claims that proper protection was provided since plaintiff was using the scaffold in conjunction with a rope grab that was not shown to be defective in any manner. To the extent that the rope grab obviously did not prevent the fall it is defendant's position that plaintiff may have been holding the rope grab in the disengaged position when he fell. In defendant's view, this conduct creates an issue of fact precluding summary judgment. Defendant's position does not bear scrutiny.

At the outset it must be recognized that if plaintiff did not disengage the rope grab, the device was deficient for purposes of Labor Law § 240 (1) since it failed to perform its intended function of arresting his fall (*see, Drew v Correct Mfg. Corp.*, 149 AD2d 893). In this regard, plaintiff, at his deposition, denied disengaging the rope grab before his fall. On the other hand, if plaintiff was holding the rope grab in the disengaged position when he fell, this conduct would constitute contributory negligence, which is not a defense to a Labor Law § 240 (1) cause of action (*Stolt v General Foods Corp.*, 81 NY2d 918, 920). Recognizing the inevitability of this conclusion, defendant seeks to avoid it by categorizing plaintiff's alleged conduct in holding the rope grab as the sole proximate cause of the accident (*see, Weininger v Hagedorn & Co.*, 91 NY2d 958).

Undeniably the distinction between the situation when a worker's conduct is the sole proximate cause of an accident, and when it is merely a contributing factor, can be difficult to discern under a given set of facts (*see, Weininger v Hagedorn & Co., supra; Ossorio v Forest Hills S. Owners*, 251 AD2d 475). Nevertheless, wherever the precise boundaries between the two concepts may lie, it is clear that accidentally holding the rope grab in the disengaged position may certainly have contributed to the occurrence of the accident, but it was not its sole cause (*cf., Lightfoot v State of New York*, 245 AD2d 488).

Stated otherwise, since the rope grabbing mechanism could be accidentally held in the disengaged position during a fall it failed to provide plaintiff with proper protection for purposes of Labor Law § 240 (1).

This conclusion is especially warranted since there is no basis for finding that plaintiff's conduct was so unforeseeable as to constitute a superceding cause of the accident (*see, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 562), or that plaintiff disregarded his supervisor's specific instructions as to the proper use of the rope grab (*cf., Vasquez v G.A.P.L.W. Realty*, 236 AD2d 311).

It follows that plaintiff's motion for partial summary judgment should have been granted.

Finally, we do not reach plaintiff's additional argument that Labor Law § 240 (2) was violated since plaintiff did not specifically allege such a violation in his amended complaint (*see, Dominguez v Lafayette-Boynton Hous. Corp.*, 240 AD2d 310, 313, *supra*).* Concur—Tom, J. P., Mazzarelli, Lerner and Friedman, JJ. [As amended by unpublished order entered Apr. 6, 2000.]

---

* We do not address the issue of possible liability premised upon a product liability claim. That issue is not before the court and the record before us could not properly be resolved.